UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

THE VAUGHAN COMPANY, REALTORS,     Case No. 10-10759-j11
    Chapter 11
    Debtor.

---

JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors,

    Plaintiff,

v.     Adv. Proc. _____

MICHAEL DRESKIN, CAROL WILLIAMS
and ELITE REAL ESTATE, LLC d/b/a
REMAX ELITE,

    Defendants.

## COMPLAINT

Judith A. Wagner (the "**Trustee**"), as Chapter 11 Trustee of the bankruptcy estate of Vaughan Company, Realtors ("**VCR**"), by counsel, Askew & Mazel, LLC (James A. Askew and Edward A. Mazel) and Sanders & Westbrook, P.C. (Maureen Sanders), for her Complaint, states:

## NATURE OF PROCEEDING

1. This adversary proceeding arises from an exodus of a group of real estate brokers who were employed by the debtor, The Vaughan Company, Realtors (the "**Debtor**"), on February 22, 2010 (the "**Petition Date**"), and subsequently relocated to Elite Real Estate, LLC d/b/a ReMax Elite ("**ReMax**").

2. The purpose of this proceeding is to recover damages from Defendants for their acts and omissions in furtherance of improperly relocating the Debtor's brokers, and to recover

1

damages for defendant Michael Dreskin's ("**Dreskin's**") breach of fiduciary duties while acting as the representative of the Debtor while it was proceeding in the above-captioned case as a debtor in possession.

3. During the course of this adversary proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to Defendants or of additional causes of action against Defendants. It is the Trustee's intention to avoid and recover all transfers made by VCR of an interest of VCR in property that were made to or for the benefit of Defendants or any other transferee, and pursue all available causes of action against Defendants. The Trustee reserves the right to amend this original Complaint to include: (i) further information regarding any transfers made by VCR to Defendants, (ii) additional transfers made by VCR to Defendants, (iii) modifications or revisions to Defendants' names, (iv) additional Defendants, or (v) additional causes of action (i.e. but not exclusively, 11 U.S.C. §§ 542, 544, 545, 548, and 549) (collectively, the **"Amendments"**) that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for all Amendments to relate back to this original Complaint.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and/or 157.

5. All counts set forth in the Complaint are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), and/or (O).

6. Venue in this district is proper under 28 U.S.C. §§ 1408 and/or 1409.

7. On February 22, 2010 (the "**Petition Date**"), VCR commenced the above-captioned case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy

2

Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"). The Petition Date is the date of filing the petition within the meaning of §§ 547 and 548 of the Bankruptcy Code and is the date of the commencement of the case within the meaning of § 544 of the Bankruptcy Code.

8. On April 29, 2010, the Trustee was appointed Chapter 11 Trustee in this case, and continues to serve in that capacity.

9. Pursuant to §§ 323(b) and 704(a)(1) of the Bankruptcy Code, the Trustee has standing to bring these claims because, *inter alia*, VCR incurred losses and was damaged as a result of the claims set forth herein.

## ALLEGATIONS COMMON TO ALL COUNTS

10. From February 22, 2010, through April 29, 2010, the Debtor proceeded in bankruptcy case No. 10-10759 as a debtor in possession.

11. Upon information and belief, at all relevant times Dreskin was a "director" of the Debtor.

12. From at least 2000 through April 29, 2010, Dreskin was part of VCR's management team.

13. On or about March 2, 2010, the Debtor appointed Dreskin as its interim Chief Executive Officer.

14. On or about March 3, 2010, Dreskin, on behalf of the Debtor, signed a Receipt and Certification of Understanding UST Guidelines and Reporting Requirements and Certification of and Understanding of Chapter 11 Debtor in Possession to Obtain Prompt Determination of Unpaid Tax Liability.

15. On March 25, 2010, Dreskin, on behalf of the Debtor as its interim Chief Executive Officer ("**CEO**") and part of its management team, testified at the first meeting of

3

creditors held in the above-captioned case. During the first meeting of creditors, Dreskin testified that:

a. He was appointed interim CEO around March 10 or 12, 2010;

b. Prior to becoming interim CEO, he managed the Debtor's office on Paseo Del Norte and was part of the Debtor's management team for approximately 10 years;

c. VCR had approximately 135 brokers when the bankruptcy was filed and approximately 240 listings;

d. The Debtor's plan was to move ahead as an operating organization, representing sellers whose houses the Debtor was listing and representing buyers who were in the market to purchase a home;

e. Dreskin's intent was to personally continue to work for the Debtor throughout the reorganization and continue his management duties;

f. As of the date of the first meeting of creditors, the Debtor employed 90 real estate brokers and stated that the current agents were "pretty" committed to staying;

g. The VCR bankruptcy filing did not have a dramatic effect on pending listings;

h. VCR's brokers wanted to continue to work for VCR so long as it was a viable business;

i. VCR was hoping to be a viable, profitable company that would generate profits to repay debts; and

j. VCR's management team was very experienced and if the Debtor's agents could be retained, Dreskin believed VCR had a viable business.

16. On or about April 8, 2010, the Debtor licensed the trade name NM Real Estate Associates and prior to April 8, 2010, the Debtor's bankruptcy estate paid to have new "for sale" signs made under the new trade name. In an article in the Albuquerque Journal dated April 9, 2010, Dreskin stated that the Debtor licensed the new trade name because "we're distancing ourselves from the Vaughan name and all the negative connotations…the big push was people not wanting a Vaughan sign in their front yard."

17. On April 14, 2010, the United States Trustee's Office filed a Motion to Appoint a Trustee or Convert the Case (Docket Nos. 163 and 164). That motion sought to either convert VCR's bankruptcy to a liquidation under Chapter 7 or to appoint a Chapter 11 trustee.

18. On April 15, 2010, Dreskin and others sent, or caused to be sent, an e-mail to the Debtor's brokers and staff stating

> "US Trustees [sic] office filed a motion yesterday afternoon to convert us to a Chapter 7. The US Trustee was not aware that we had already reached an agreement with the SEC to allow us to continue with our re-structuring [sic]. That document was filed with the Court this morning. Once the US Trustee was aware that we had an agreement with the SEC, she agreed verbally not to proceed with converting us to a Chapter 7."

19. On or about April 20, 2010, Debtor's counsel informed the U.S. Trustee's Office that the Debtor's brokers were leaving, and on April 30, 2010, Debtor's counsel informed the U.S. Trustee's Office that all of the realtors were leaving as of April 30, 2010.

20. On April 23, 2010, at 5:06 p.m., Dreskin and others, sent, or caused to be sent, an e-mail to VCR's staff and brokers stating:

> "This afternoon, the US District Judge issued an order to appoint a Trustee over our Office and put us into a Chapter 7. Essentially, that shuts us down as an entity. It is recommended that you take action to transfer your license to a new company, cancel your current listings (this weekend), using the RANM form, and relist with a new company. Pending sales will be paid at the title company and we are assured there will be no issue with that. We did our best to keep the

Company together, but the court has decided otherwise. The Best to All of You-it has been our pleasure to be associated with you."

21.     On April 23, 2010 the Trustee Judith A. Wagner was contacted for the first time by the US Trustee's office to potentially serve as Chapter 11 trustee. No trustee had yet been appointed.

22.     The Invoice for VCR's attorneys, Law office of George "Dave" Giddens, P.C., reflects an entry on 4/23/2010 labeled "phone call from Michael Dreskin re transition to chapter 11 trustee."

23.     On April 24, 2010, defendant Elite Real Estate, LLC d/b/a ReMax Elite ("**ReMax**") entered into Independent Contractor Agreements with the following brokers who were formerly employed by the Debtor: Carol Williams, Brigid Lapp, Joanne Leobetter, Rhonda Levand, Ramona Biddle, Pamela Collins, David Del Bello, Mary Denison, Gene Gaik, Harvey Grasty, and Tom Lopez.

24.     On April 25, 2010, ReMax entered into Independent Contractor Agreements with the following brokers who were formerly employed by the Debtor: Gui Bondaguidi, Anne Garrett, Yasmin Hahan, Sheryl McCrary, James David Ray, Larry Cobb, Kathleen Carpenter, Dirie Granuke, Joann Hirsig, Nancy Lonsford, Judson McCollum, Sharon McCollum, and Brett Paas.

25.     On April 26, 2010, ReMax entered into Independent Contractor Agreements with the following brokers who were formerly employed by the Debtor: Susie Greene, Rik Burke, Hector Cruz, Alison Gerby Shafer, Kerri L. Provo, Steven Vigil, David Kaiser, Brett Shafer, and Steven Vigil.

26.     From April 23, 2010, through May 26, 2010, ReMax also entered into Independent Contractor Agreements with the following brokers that were formerly employed by

the Debtor: Jeffery Fairchild (April 27, 2010), Deborah Rinehart (April 27, 2010), Monica Stanley (April 28, 2010, to be effective December 31, 2010), Theresa Strader (dated, April 23, 2011), Richard Gatner (April 30, 2010), Lew Knight (April 31, 2010), Kenneth Mills (May 26, 2010),

27. It was not until April 29, 2010, that an Order was entered appointing the Trustee as the Chapter 11 Trustee in the above-captioned case (Doc. No. 201).

28. Debtors in Chapter 11 generally continue their day to day operations while restructuring.

29. On April 29, 2010, Dreskin resigned as registered agent for VCR. His resignation acknowledges that "the corporation is in Chapter 11."

30. On April 30, 2010, Dreskin agreed to continue to serve as qualifying broker for VCR while it continued to operate as a debtor in possession under the Trustee's oversight.

31. By at least May 12 or May 13, 2010, Dreskin realized the Trustee was not going to seek to immediately convert the above-captioned case to one under Chapter 7 of the Bankruptcy Code.

32. On or about May 15, 2010, Dreskin entered into a Co-Qualifying Broker Agreement with ReMax with an effective date of May 15, 2010. Upon information and belief, Dreskin had been negotiating with ReMax to become a ReMax broker for several weeks prior to entering into the Co-Qualifying Broker Agreement with ReMax.

33. Through a letter dated May 27, 2010, Dreskin resigned as qualifying broker for VCR d/b/a New Mexico Real Estate Associates and allegedly returned all records.

34. Upon information and belief, ReMax received a discount in "continuing franchise fees" since former VCR brokers were just starting to work as brokers for ReMax.

7

35. Upon information and belief, prior to April 20, 2010, Carol Williams, while still employed as a broker for VCR, canvassed VCR's brokers and recruited and prepared them to relocate to ReMax.

36. Upon information and belief, in April 2010, Dreskin and Williams were negotiating with ReMax to relocate a large number of VCR's brokers in the event the Debtor's Chapter 11 bankruptcy case was converted to a Chapter 7 bankruptcy case.

37. Upon information and belief, Dreskin fabricated panic among VCR's brokers by improperly and inaccurately making false statements that the Court had decided to "appoint a Trustee," "put us [VCR] into a Chapter 7," and essentially "shut us down as an entity" and advising the then current brokers to cancel their listings that weekend.

38. Upon information and belief, Dreskin made the above-mentioned false statements for his own personal benefit and in order to cause VCR's brokers to follow Williams to ReMax.

39. As a direct and proximate result of the false statements and acts by Dreskin, VCR's then-existing brokers relocated to ReMax.

40. Upon information and belief, certain of the Debtor's listings (the "**Debtor's Listings**") were transferred to ReMax and relisted. Upon information and belief, the Debtor's Listings eventually resulted in closed sales while listed with ReMax and ReMax was paid a portion of the commissions on those sales(collectively, the "**Commissions**").

41. VCR's reorganization as a viable business was at least in part dependent upon VCR generating revenues in the form of commissions from real estate sales through its experienced team of brokers and employees.

8

42. As a direct result of actions by Dreskin and Williams, VCR was unable to generate revenues because VCR's listings were transferred, and certain staff and brokers relocated to ReMax.

43. As a direct result of actions by Remax, Dreskin and Williams, VCR's opportunity to further its plan to continue as a real estate brokerage business was thwarted and made impossible.

44. ReMax, through its employees, agents or representatives, assisted Dreskin and Williams in their efforts to move VCR's listings, staff, and brokers away from VCR.

45. Upon information and belief, ReMax received revenues from closed sales for listings that were diverted from VCR, and that would have been received by VCR but for the exodus of VCR's agents.

## COUNT 1
## ACCOUNTING (ALL DEFENDANTS)
## 11 U.S.C. § 542

46. The Trustee re-alleges and incorporates by reference the foregoing allegations as if fully set forth herein.

47. The Commissions constitute property of the estate to be recovered and administered by the Trustee pursuant to § 541 of the Bankruptcy Code.

48. As a result of the foregoing, pursuant to § 542 of the Bankruptcy Code, the Trustee is entitled to a full and complete accounting of any and all information relating to the Commissions, including any and all listing agreements and closing statements for such listings.

## COUNT 2
## BREACH OF FIDUCIARY DUTY (DRESKIN)

49. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this complaint as if fully rewritten herein.

9

50. As VCR's interim CEO and representative of the insolvent debtor in possession, Dreskin owed a fiduciary duty to the Debtor, its estate, and its creditors.

51. As VCR's interim CEO during VCR's tenure as a debtor in possession, Dreskin owed a duty of care and loyalty to the debtor in possession, its estate, and its creditors.

52. As VCR's interim CEO, Dreskin was an officer of the Court, and had the responsibility to act in the best interests of the estate as a whole.

53. At all times in which VCR was insolvent, Dreskin's fiduciary duty extended to VCR's creditors.

54. Dreskin's statements and acts set forth above furthered his own self interest, rather than the interest of VCR, its estate, and its creditors.

55. Dreskin placed his own interest above the interests of VCR, its estate, and its creditors.

56. VCR was damaged as a result of Dreskin's actions.

57. Dreskin's wrongful actions entitle the Trustee to compensatory damages, disgorgement of all commissions recovered as a result of VCR's listings, disgorgement of all amounts paid to him as interim CEO and representative of the Debtor-in-Possession, and punitive damages and attorneys' fees.

## COUNT 3
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (WILLIAMS)

58. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

59. Dreskin owed a fiduciary duty to VCR.

60. Dreskin breached his fiduciary duty to VCR by, *inter alia*, the actions set forth herein.

10

61. Williams was aware of Dreskin's fiduciary duty to VCR.

62. Williams intentionally provided substantial assistance or encouragement to Dreskin to breach his fiduciary duty to VCR.

63. Williams knew Dreskin's acts were a breach of his fiduciary duty to VCR.

64. VCR has been damaged by Dreskin's breach of his duty, and by Williams' assistance or encouragement in assisting Dreskin in the breach of his duty.

65. Williams' wrongful actions were such that VCR is entitled to compensatory damages, as well as disgorgement of any and all commissions received as a result of VCR listings, and punitive damages and attorneys' fees from Williams.

## COUNT 4
## CIVIL CONSPIRACY; CONSPIRACY TO BREACH FIDUCIARY DUTY
## (DRESKIN AND WILLIAMS)

66. Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

67. As set forth herein, Dreskin had a fiduciary duty to VCR, the estate and its creditors.

68. A conspiracy existed between Dreskin and Williams to wrongfully usurp VCR's team of brokers for their own benefit.

69. Dreskin and Williams' acts, as set forth herein, were carried out by Dreskin and Williams pursuant to the conspiracy.

70. Dreskin and Williams' acts, as set forth herein, were carried out in order for Dreskin to breach his fiduciary duties to VCR.

71. VCR suffered damages as a result of Dreskin's and Williams' acts.

11

72. The Trustee is entitled to recover compensatory and punitive damages as a result of Dreskin's and William's conduct.

73. Dreskin and Williams are jointly and severally liable for their actions.

## COUNT 5
## TORTIOUS INTERFERENCE WITH CONTRACTS; BROKER'S LISTING AGREEMENTS (REMAX, DRESKIN, WILLIAMS)

74. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this complaint as if fully rewritten herein.

75. ReMax, Dreskin and Williams had knowledge of VCR's independent contractor agreements with its brokers (the "**Independent Contractor Agreements**".) As a result of ReMax's, Dreskin's and William's actions and misconduct, VCR was unable to full its obligations under the Independent Contractor Agreements with its brokers.

76. ReMax, Dreskin and Williams played an active and substantial part in causing VCR to lose the benefits of its contracts with its brokers.

77. ReMax, Dreskin and Williams induced VCR's brokers to breach their Independent Contractor Agreements with VCR without justification or privilege.

78. VCR suffered damages as a result of ReMax's, Dreskin's and Williams' actions and misconduct.

79. The Trustee is entitled to recover compensatory and punitive damages from ReMax, Dreskin and Williams as a result of their actions and misconduct.

## COUNT 6
## NEGLIGENCE (DRESKIN)

80. Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

12

81. Dreskin had an obligation to provide services to VCR in a manner which met the standard of care (i) for corporate officers in New Mexico, (ii) for a qualifying broker, and and/or (iii) for an officer of a debtor in possession.

82. Dreskin failed to provide services in a manner which met one or more of the above-mentioned standards of care by, *inter alia*, engaging in the actions set forth herein, including making misrepresentations of fact.

83. Dreskin's actions damaged VCR.

84. The Trustee is entitled to recover compensatory and punitive damages from Dreskin as a result of his actions.

## COUNT 7
## UNJUST ENRICHMENT (REMAX)

85. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

86. Defendants conferred a benefit on ReMax by relocating VCR's brokers and closing real estate sales that would have otherwise been closed with VCR, and thus receiving the Commissions.

87. ReMax realized the benefit of the Commissions.

88. Under the circumstances, it would be inequitable for ReMax to retain the benefit of the Commissions which rightfully belonged to VCR and ReMax should be ordered to disgorge all of the Commissions

89. VCR has been damaged by ReMax's failure to repay it for the closings made by ReMax that would have otherwise closed with VCR and is entitled to payment of the Commissions.

## COUNT 8
## DISALLOWANCE OF CLAIMS PURSUANT TO 11 U.S.C. § 502, OR ALTERNATIVELY, EQUITABLE SUBORDINATION OF CLAIM PURSUANT TO 11 U.S.C. § 510(c) (DRESKIN AND WILLIAMS)

90. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

91. Dreskin and Williams engaged in the inequitable and improper conduct set forth herein.

92. Based upon the foregoing allegations and pursuant to § 502(d) of the Bankruptcy Code, Dreskin's and Williams' claims, if any, must be disallowed since Defendant has not repaid VCR for the damages incurred as a result of the Defendants' conduct.

93. Alternatively, pursuant to § 510(c) of the Bankruptcy Code and based on the foregoing allegations and principals of equitable subordination, the Court should subordinate Dreskin's and Williams' claims to all other unsecured claims because of Dreskin and Williams' inequitable conduct which has resulted in injury to VCR, other creditors and/or conferred an unfair disadvantage on other creditors.

## COUNT 9
## BREACH OF CONTRACT (DRESKIN AND WILLIAMS)

94. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

95. Upon information and belief, Dreskin and VCR had a contract pursuant to which Dreskin was employed by VCR.

96. Upon information and belief, Williams and VCR had a contract pursuant to which Williams was employed by VCR.

14

97. Dreskin and Williams breached their respective contracts by engaging in the above-described actions and thereby failing to provide competent services.

98. Dreskin and Williams further breached their respective contracts by ceasing their performance under the contract.

99. Dreskin and Williams, by, *inter alia*, the actions described above, breached the covenant of good faith and fair dealing inherent in any contract in New Mexico.

100. Dreskin's and Williams' breaches of the contract between them and VCR caused damages to VCR thereby entitling VCR to compensatory and consequential damages.

101. Dreskin's and Williams' wrongful actions were such that VCR is entitled to punitive damages from both Dreskin and Williams.

## COUNT 10
## LIBEL (DRESKIN)

102. Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

103. On or about April 23, 2010 at 5:06 p.m., Dreskin published or caused to be published a communication containing an alleged statement of fact concerning VCR by sending or causing to be sent an e-mail to all of VCR's independent contractors, from him and other VCR managers, stating (i) the US District Judge issued an order to appoint a trustee over VCR and put VCR into Chapter 7; (ii) essentially, that VCR was shut down as an entity; and (iii) a recommendation to associate brokers that they take action to transfer their real estate license to a new company, cancel their listings, and relist with a new company.

104. Those statements were false and the communications were defamatory.

105. The persons receiving the communications understood the statements to be defamatory.

106. Dreskin either knew that the communications were false, negligently failed to recognize that they were false, or acted with malice in making such communications.

107. The communications caused actual injury to VCR's reputation and an exodus of associate brokers.

108. VCR suffered actual injury as a result of the communications.

109. The Trustee is entitled to compensatory damages for the actual injuries caused by the defamatory communications.

110. The communications were either made with knowledge of their falsity, or with a reckless disregard for whether they were false or not; therefore, The Trustee is entitled to punitive damages.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in favor of Trustee and against Dreskin, Williams and ReMax, as follows:

A. On Count 1, pursuant to §542 of the Bankruptcy Code, the Trustee is entitled to immediate payment and turnover from Dreskin, Williams and ReMax of any and all of the Commissions paid, directly or indirectly, to Dreskin, Williams or ReMax and attorneys' fees.

B. On Count 2, under breach of fiduciary duty, award the Trustee compensatory damages, disgorgement of all salary and commissions on all listings received from VCR and punitive damages from Dreskin, plus attorneys' fees.

C. On Count 3, under aiding and abetting breach of fiduciary duty, award the Trustee compensatory damages, disgorgement of all commissions on all listings received from VCR and punitive damages from Williams, plus attorneys' fees.

D. On Count 4, under civil conspiracy and conspiracy to breach fiduciary duty, award The Trustee compensatory and punitive damages and disgorgement from Dreskin and Williams.

E. On Count 5, under tortious interference with contract, award to The Trustee compensatory and punitive damages from ReMax, Dreskin and Williams.

F. On Count 6, under negligence, award to The Trustee all damages caused by Dreskin's negligence as well as punitive damages.

G. On Count 7, under unjust enrichment, order disgorgement of all Commissions from ReMax plus attorneys' fees

H. On Count 8, pursuant to §§ 502(d) and 510(c) of the Bankruptcy Code, that Defendant's claims, if any, must be disallowed since Defendant has not repaid VCR for the damages incurred as a result of the Defendants' conduct, or in the alternative subordinated, because of Dreskin's and Williams' inequitable conduct, which has resulted in injury to VCR, other creditors and/or conferred an unfair disadvantage on other creditors.

I. On Count 9, under breach of contract, award to The Trustee compensatory, consequential and punitive damages from Dreskin and Williams.

J. On Count 10, under libel, award to the Trustee actual, compensatory, and punitive damages from Dreskin.

K. On all Claims for Relief, awarding the Trustee all applicable interest, costs and attorneys' fees of this action; and

On all Claims for Relief, any further relief deemed just and proper by this Court.

ASKEW & MAZEL, LLC

By: *s/ filed electronically*
James A. Askew
Edward A. Mazel
320 Gold Ave. SW, Ste 300A
Albuquerque, New Mexico 87102
(505) 433-3097 (telephone)
(505) 717-1494 (fax)
*Attorneys for Judith A. Wagner, Chapter 11 trustee of the Vaughan Company Realtors bankruptcy estate*

 -and-

Maureen Sanders
SANDERS & WESTBROOK, P.C.
102 Granite Avenue, NW
Albuquerque, NM 87102
(505) 243-2243
(505) 243-2750 (fax)
*Special Counsel for the Trustee*

18